JOHN B. GIBSON v. HAYWOOD FOOTE.

1. TRUSTS AND TRUSTEES : RESULTING TRUSTS: EVIDENCE TO ESTABLISH.—To establish a resulting trust, where one employs the money of another in the purchase of real estate, and where there is no valid agreement to purchase the property with the trust-money, it is necessary to show that the money, at the time of the purchase, was the fund of the party claiming it, and that it was used in the purchase of the property.

2. SAME: CASE IN JUDGMENT.—Where money was loaned by the wife to her husband, to.be paid, principal and interest, or invested in real estate for the use of the wife, and the husband subsequently promised verbally to purchase real estate to the amount of money received by him, and take the title in the name of the wife. Afterwards the husband purchased certain lands, which he was enabled to make alone through the money received from his wife, and took the title in his own name. Held—That these allegations were not sufficient to establish a resulting trust in favor of the wife, or her heirs, in the lands purchased; and that the special promise did not create an express trust, because not in writing.

3. TRUSTS: STATUTE OF FRAUDS.—A promise or agreement to create an express trust must be in writing; only implied trusts are excepted from the operation of the statute of frauds.

4. TRUSTS AND TRUSTEES : HUSBAND AND WIFE : HUSBAND TRUSTEE FOR WIFE.—The statute, Rev. Code, page 336, article 24, which makes the husband trustee for the wife, if he purchase property in his own name with her money, applies to cases where the husband purchases property in his own name with the money of the wife, and without her consent.

APPEAL from the Circuit Court of Hinds county. Hon. John Watts, judge.

*Johnston* and *Johnston*, for appellant, cited 1 Story's Eq. Ju. 1201, 1202, 1210, 1211, 1212, and notes, 1265; *Ross* v. *Duncan*, Freeman's Ch. R. 134; Rev. Code, 336, article 24.

*T. J.* and *F. Wharton*, for appellee, cited *Wiley and Co.* v. *Gray*, 36 Miss. R. 510, 516; *Coppage* v. *Bennett*, 34 Ib. 621, 649; *Mitchell* v. *Mitchell*, 35 Miss. R. 108; *Norman* v. *Burnett*, 25 Miss. R. 183; *Walker* v. *Brungaw*, 13 S. &. M. 723, 764; *Gee* v. *Gee*, 32 Miss R. 190, 192; 38 Ib. 574, 593, 594.

HANDY, C. J., delivered the opinion of the court.

This was a bill in equity, filed by the appellant against the appellee, for the purpose of establishing an implied trust in favor of the appellant, in certain lands purchased by the appellee.

The material allegations of the bill are, that the appellant was the only child of his mother, Anne C. Gibson, who, being a widow, intermarried with the appellee in the year 1858, and died in the year 1865, intestate, and without there having been any issue of her marriage with the appellee; that at the time of her marriage she was possessed, in her own right, and as her separate property, under the laws of this State, of a sum of money amounting to about $4,000, which money the appellee borrowed from her, pledging himself to return the same, and fully account for it by returning the principal and interest, or by investing the same in real estate, for the sole use and benefit of his wife.

The bill then makes an exhibit of a writing signed by the appellee, in the following words:

"Claiborne, January 18, 1861. I have collected of Mrs. Shelby and others of Port Gibson, about $3,000, which was due my wife Anne C. Foote, and for which I will make arrangements to pay her as soon as I can conveniently do so." But the bill does not allege that this paper was the evidence of the agreement previously stated.

It further alleges, that the appellee received about $1,000 more, for and on account of his wife, pledging himself to account therefor; that on or about the 2d February, 1862, he promised his wife to purchase real estate to the amount of the moneys received by him, and to take the title in her name in satisfaction of that amount; and that on the 2d February, 1862, he did purchase certain lands of one Johnson and wife, for the sum of $4,080. The deed is exhibited, and bears date 22d February, 1862, and is made to the appellee, when in fact he was acting as the agent and trustee of his wife; that both before and after the purchase, he pretended that he had taken the title in the name of his wife. It further alleges that the appellee was enabled to make said purchase alone through the cash

acquired from his wife; that he was really a trustee for her in the matter; and that he took the deed in his own name in fraud of her rights.

The appellee filed an answer denying the charges of fraud, and a demurrer to the right set up and the relief sought in the bill. This demurrer was sustained, and from that decree this appeal is taken.

In order to establish a resulting trust in a case of this sort, and where there is no valid agreement to purchase the property with the trust-money, it is necessary to show that the money was, at the time of the purchase, the fund of the party claiming it, and that it was used in the purchase of the property. For the doctrine of trust, in such a case, proceeds on the idea that the money was the property of the party, and that its form merely has been changed by the purchase, so that the land is subject to the same right as the money.

When we carefully examine the statements of this bill, it is evident that they are deficient in alleging that the money was a specific fund belonging to the wife in the hands of the husband at the time of the purchase, or that that fund was applied in making the purchase.

First, as to the property in the fund. It alleges that the husband "*borrowed*" the money from the wife, pledging himself to return or fully account for it, by returning the principal and interest, or by investing the same in real estate for her use and benefit. This allegation appears to be general, and to apply to the entire money received by the husband. It shows that the money was *loaned* by the wife to the husband, to be paid, principal and interest, or invested in land for her use. The agreement to pay interest clearly shows that it was contemplated that he should use the money on his own account. He, therefore, clearly had the option to use it as his own, as borrowed money, which he was to take and use, paying interest on it, or to invest in land for her use; and it appears that he applied it to his own use in the purchase of land in his own name and right.

The bill then proceeds to particularize as to this general alle-

gation, and to state how this money was received, and the nature of the obligation of the husband. It shows a written acknowledgment of the husband, dated 18th January, 1861, of his having collected $3,000 of the money due his wife, and agreeing " *to make arrangements to pay her as soon as he could conveniently do so ;* " and it further alleges that he received about $1,000 more, for and on account of his wife, "pledging himself to account for the same." These two sums make up the amount which he is alleged to have received ; and it is clear from the statements of the bill in relation to each of them, that he is only chargeable as upon a general indebtedness for both of them, for money had and received by him to her use ; and these particular statements appear fully to negative the idea that the money was held by him as a specific fund belonging to her.

Second, as to the application of this money to the purchase of the land. It alleges that he promised his wife to purchase real estate *to the amount of the moneys received by him,* and to take the title in her name in satisfaction of the amount ; and that afterwards he did purchase the lands claimed, for the sum of $4,080 ; and that *he was enabled to make such purchase alone through the cash acquired from his wife.* It does not aver that he appropriated the money, received for, or on account of, his wife, to the purchase of the land ; and these allegations may be true, and yet the money might have been his property by the loan or permission of the wife ; in which event he would have had the right to make use of it for his own benefit as he thought proper, being accountable only to her for so much money had and received by him to her use. There is no distinct and positive averment that the money received on account of the wife was paid for the purchase of the land, and such an inference could not be indulged ; because the averments must be taken most strongly against the pleader, and because such inference would be irreconcilable with the allegations that the money was borrowed by him on interest, that he was to pay it as soon as he could conveniently do so, and that he pledged himself to account for it.

It is, therefore, very clear that the allegations of the bill do not show a case of implied trust.

But it is insisted that such a trust is shown by the allegation that, in February, 1862, the appellee *promised* his wife to purchase real estate to the amount of the moneys received, and to take the title in her name; and that he did make the purchase, but took the title in his own name.

Upon this view, the bill shows a case of *express trust,* founded on the promise of the appellee to purchase real estate to the amount in which he was indebted to his wife, and for her use. The right of the wife would depend entirely on the *express promise* of the husband to perform this obligation; and, of course, it does not show a case of *implied trust,* which can only exist by implication of law, and results from the facts of the case showing that the party is in equity entitled to the right claimed.

The argument of counsel for the appellant on this point goes to show that it is a case of express trust; and if that be true, it is obnoxious to the objection taken by the demurrer, that it is void under the statute of frauds, because not in writing and signed by the party; for it is only implied trusts that are excepted from the operation of that statute.

Again, it is insisted by counsel for the appellant, that he is entitled to the relief sought in this case by the provision of our statute (Rev. Code, 336, article 24), that, "if the husband shall purchase property in his own name, with the money of the wife, he shall hold the same only as trustee for her use," etc.

The object of this statute was to secure to the wife property purchased by the husband with her money in his hands, without her consent. It has reference to cases where such money continues to be the property of the wife; but not to cases where he is allowed, by her consent, to have the use of it as his own property. We have above seen that, according to the statements of this bill, the money in this case was *borrowed* by the husband upon an agreement to pay interest for it; which clearly showed that it was understood that he was to have the use of it for his own benefit, if he thought fit to do so. It cannot, therefore, be

regarded as money of the wife in the hands of the husband, when he purchased the land, within the contemplation of this statute.

We are, therefore, of opinion that the demurrer was properly sustained; and the decree must be affirmed and the bill dismissed.