[Whaley v. Whaley.]

# Whaley *v.* Whaley.

*Bill in Equity to enforce Resulting Trust in Land.*

71  159
95  227

71  159
101  400

71  159
111  578
112  363
113  444

71  159
117  429
117  430

71  159
129  625

1. *Right of trustee to pursue trust funds invested in other property; character of the trust.*—Where a *cestui que trust* seeks to pursue trust funds invested by the trustee in land or other property, and title taken in his own name, or in the name of a stranger with notice, it is wholly immaterial whether the money was paid at the time of the purchase or afterwards. This is not technically or strictly a resulting trust, but a trust created by law, originating in the right of the *cestui que trust* to pursue the trust fund, through its various transmutations, into a new investment made in violation of the trustee's duties.

2. *Resulting trust; money must be paid at time of purchase.*—Where no question arises as to misappropriation of trust funds, but money or property without fiduciary ear-marks is paid or invested by one person, and the title is taken in the name of another, the money must be paid or the property re-invested at the time of the purchase, in order to create a resulting trust.

3. *Same; does not exist where the money was loaned.*—If one person advances the purchase-money of property by way of a loan to the vendee, and conveyance of title is made to the latter, no trust will result in favor of the party advancing the money. In such case the very fact of a loan contradicts and rebuts the implication of a trust, which might otherwise be presumptively raised by law.

4. *Same; can not be created by parol agreement.*—Where such a trust does not result from the transaction itself, by implication of law, it can not be created by express agreement between the parties, resting merely in parol, as such an agreement would violate the statute of frauds.

APPEAL from Pike Chancery Court.

Heard before Hon JNO. A. FOSTER.

The bill in this cause was filed on 25th September, 1879, by James M. Whaley and Elizabeth P. Massey against Isaac R. Whaley and others, for the purpose of establishing a resulting trust in certain lands in the bill described. The facts from which, it is claimed, the trust results are stated in the bill to be substantially as follows: In 1858, Isaac Whaley departed this life intestate, seized and possessed of an estate consisting, in part, of the lands described in the bill. These lands were sold under the order of the Probate Court of Pike county by the administrators in chief, the widow, Ruth Whaley, consenting that her dower interest might be sold under the statute. The purpose for which the lands were sold is not stated in the bill, but it is averred that the estate was solvent. At the sale Ruth Whaley purchased said lands and " other property, for which she executed her note for the sum of twenty-two hundred and fifty 31-100 dollars, supposing that her distributive share in said es-

tate would be equal to, or more than said amount," but owing to bad management and the results of the war, she was in this disappointed. The administrators in chief "resigned or were removed," and an administrator *de bonis non* having been appointed, he threatened to commence proceedings to have the lands subjected to the payment of said note. In order to secure the lands to the said widow, an agreement was made and entered into, during the year 1866, by and between the complainants and the said administrator, Ruth Whaley and all the heirs of Isaac Whaley, deceased, who were then of age, that said estate "was due complainant, Elizabeth Massey, as one of the heirs of Isaac Whaley, deceased, about the sum of five hundred dollars, and also due J. M. Whaley, the other complainant, about the sum of three hundred and fifty dollars; that said two amounts should go in payment and extinguishment of said Ruth Whaley's note; and Ruth Whaley then and there promised and agreed, in consideration of said sums, that, in the event she should not be able to pay complainants their sums of money back, they were to be re-imbursed out of the lands and any other property she might have and own at her death." In pursuance of this agreement "the said Ruth Whaley executed to complainants her promissory notes for the amounts of the advancements made by them respectively;" and afterwards the administrator reported the payment of the purchase-money for the lands, and under an order of court conveyed the same to the said Ruth Whaley. Copies of the notes made to complainants are made exhibits to the bill. In the note to James M. Whaley the consideration is stated to be money paid by him to the administrator on the note for the purchase-money for said lands; but no consideration is expressed in the other note. All the heirs and distributees were fully paid their distributive shares in said estate, except the complainants. Ruth Whaley died in February, 1877. The complainants and the defendants are the only heirs at law of said decedent.

The defendants answered the bill, insisting that there was no resulting trust as claimed by the complainants, and that the agreement between them and Mrs. Whaley rested in parol, and was void under the statute of frauds.

The cause was first heard at the spring term, 1880, of said court, before Hon. H. Austill, on pleadings and proof, and a decree was then entered dismissing the bill; but, at the same term, an application was made by the complainants for a rehearing, which was afterwards granted in vacation, the order granting the rehearing reciting that it was held up for decree in vacation. At the spring term, 1881, the cause was again submitted on the pleadings and proof, and also "on the power of the Chancery Court to grant a rehearing" in the cause, and was heard

[Whaley v. Whaley.]

before the Hon. Jno. A. Foster. On this hearing the chancellor was of the opinion, that no action was taken on the application for a rehearing during the term at which it was made, and that the subsequent granting of the rehearing in vacation was without authority of law and void. He, therefore, caused a decree to be entered, setting aside the submission, and striking the cause from the docket, "the same," as stated in the decree, "having been dismissed out of court by a former decree, which is in full force and effect."

The decree rendered at the spring term, 1880, dismissing the cause, and the decree rendered at the spring term, 1881, striking the cause from the docket are here assigned as error.

W. D. WOOD, for appellants.

PARKS & HUBBARD, contra.

· (No briefs came to the hands of the reporter.)

SOMERVILLE, J.—It would seem clear, beyond doubt, on well settled principles, that the appellants, Whaley and Massey, had no resulting trust or equity in the land described in the bill as having been conveyed to Mrs. Whaley, the mother of appellants.

The rule is properly stated in *Preston v. McMillan*, 58 Ala. 84, that when a *trustee* invests *trust funds or effects*, held by him in a fiduciary capacity, in land or other property, and takes the title in his own name, or in the name of a stranger with notice of the trust, so long as such funds can be identified by being traced into specific property, the *cestui que trust* can claim the entire property, if paid for exclusively with his money, or he can assert an equity to re-imbursement *pro tanto* for his moneys so misapplied by the trustee. In cases of this nature, it is wholly immaterial as to whether *the money was paid at the time of the purchase or afterwards*. Though often classified in the books as a resulting trust, such a designation is not technically or strictly accurate. It is a trust implied or created by law, originating in the right to pursue a trust fund, through its various transmutations, into a new investment made in violation of the duties of the trustee. 1 Perry on Trusts, §§ 127-8; 2 *Ib*. §§ 836-7; *Thames v. Herbert*, 61 Ala. 340; 1 Lead. Eq. Cases, 277-8; *Preston v. McMillan, supra*.

In the case, however, of an ordinary or technical resulting trust, where no question arises as to a misappropriation of trust funds, or their pursuit into new investments, but money or property without fiduciary ear-marks is paid or invested by one person and the title is taken in the name of another, the money

11

[Whaley v. Whaley.]

must be paid or the property re-invested *at the time of the purchase*, otherwise no resulting trust proper is created. This principle is announced in *Coles v. Allen*, 64 Ala. 98, *Lehman v. Lewis*, 62 Ala. 129, and other cases, but must be limited as applicable only to strict resulting trusts, and does not apply to investments of trust funds made by a trustee in violation of fiduciary duty.—2 Perry on Trusts, § 828, *note* 8, and cases cited.

It is, furthermore, indisputable law, that if one person advance the purchase-money of property, by way of a *loan*, to the vendee, and conveyance of title is made to the latter, no trust will result in favor of the one who thus advances the money. The very fact of a *loan* contradicts and rebuts the implication of a trust which might otherwise be presumptively raised by law. 1 Perry on Trusts, § 133; *Six v. Shaner*, 26 Md. 415; *Lehman v. Lewis*, 62 Ala. 129; *Gibson v. Foote*, 40 Miss. 788; *Chapman v. Abrahams*, 61 Ala. 108.

The application of these principles is clearly fatal to the equity of complainants' bill. The money, or claim, as the case may be considered, advanced by appellants to Mrs. Whaley during her life-time, and used by her in part payment for the land purchased from her husband's estate, was a mere loan and nothing more. The promissory notes, given for it and bearing interest, are conclusive on this point, and are utterly inconsistent with the theory of a resulting trust in favor of the lenders of the money. The recital in the notes as to the purpose for which the money was to be used in no wise changed this aspect of the transaction.

The money was advanced, too, long after the purchase of the land, and after the debt for the purchase-money had been created by Mrs. Whaley, the vendee.

In view of these facts, it was not permissible to receive parol evidence for the purpose of proving an express agreement to charge the lands with the money advanced. Parol proof is not admissible for such a purpose. Where a trust does not arise from the transaction itself so as to result by mere implication, it can not be created by the express agreement of the parties, for such agreement must be in writing and can not rest in parol; otherwise it would be in the very teeth of the statute of frauds. Code, 1876, § 2199; *Patton v. Beecher*, 62 Ala. 579; 1 Perry on Trusts, § 135.

It is unnecessary to consider the soundness of the reason assigned by the chancellor for the dismissal of the bill. It was clearly without any equity, and we prefer to rest our judgment on this less questionable ground.

Affirmed.