# Matthews v. Matthews.

*Application by Guardian for Sale of Ward's Lands.*

1. *Sale of ward's lands by guardian; what probate court has jurisdiction.*—The probate court out of which letters of guardianship issued, and which has the jurisdiction of the administration of the guardianship, has also jurisdiction to order the sale of the ward's lands, on the petition of the guardian, for the maintenance and education of the ward, wherever the land may be situated in the State. (*Turnipseed v. Fitzpatrick*, 75 Ala. 297, holding to the contrary, overruled")

APPEAL from the Probate Court of Jackson.

Heard before the Hon. WILLIAM B. BRIDGES.

The appellant, Mattie G. Matthews, as guardian of her two minor children, by appointment of the court of probate of Jackson county, which was the county of the residence of the said wards, filed her petition in the probate court of Jackson county, praying for the sale of the lands of her wards, which were situated in Calhoun county, for their maintenance and education. The guardian *ad litem* of said wards demurred to the petition, on the ground that it was shown therein that the lands prayed to be sold were not situated in Jackson county, but were in Calhoun county, and that, therefore, the probate court of Jackson county had no jurisdiction to order the sale of said lands. This demurrer was sustained, and the petition dismissed. The petitioner appeals, and assigns this decree of the probate court as error.

W. H. NORWOOD, for appellant.—Sections 2448 to 2452, under which the petition in this case was filed, are silent as to the county in which such a petition should be filed in the probate court. Nor is it there indicated in what county the real estate should be sold when the order is granted. Jurisdiction is vested in the probate court, and it is reasonable to conclude that it was intended by

said sections that the probate court of the county having jurisdiction of the guardianship is the proper court in which the petition should be filed, and that the sale of real estate of the ward should be had in the county where it lies.—*Myers v. Wade*, 6 Rand. 444; *Spelman v. Dowse*, 79 Ill. 66; *Foresman v. Haag*, 36 Ohio St. 103; *Dakin v. Hudson*, 6 Cow. 224; *Seymour v. Seymour*, 4 Johns. Ch. 409.

R. C. HUNT, *contra*.

McCLELLAN, J.—Mattie G. Matthews, as guardian of Richard L. Matthews and others, minors, filed her petition in the probate court of Jackson county for an order to sell certain lands belonging to the estate of her wards and situate in the county of Calhoun; and the question presented by the demurrer of the guardian *ad litem* in the probate court, and now presented on appeal to this court, is, whether the probate court out of which letters of guardianship issued, in which the administration of the guardianship is pending and which is of the county of the residence of the guardian and ward, or the probate court of the county in which is situated the ward's lands, has jurisdiction, on the petition of the guardian, to order a sale of such land for the support and education of the ward. In *Turnipseed v. Fitzpatrick*, 75 Ala. 297, 301, the guardian and wards resided in Pike county, and the letters of guardianship had been issued by the probate court of that county. The ward's lands were situated in Bullock county. A petition was filed by the guardian in the probate court of Pike for an order to sell these lands in Bullock for division among the wards. The order was granted and the lands were sold under it; but this court held the sale utterly void for the want of jurisdiction in the probate court of Pike county to order it. This case is directly in point on the question we are considering, upon it the court below sustained a demurrer to the petition of the guardian, and that ruling must be affirmed here unless we overrule *Turnipseed v. Fitzpatrick*. We think that case is unsound in the particular involved here and will not follow it. The conclusion reached by the court in that case was upon analogies supposed to be furnished by the statute for the *partition* of lands among tenants in common or joint tenants, and by real

actions for the recovery of land. The sale in that case was for *distribution* to the wards. The sale sought in the case at bar is also for *distribution* to the wards in the sense of supporting and maintaining them. The administration of the estate in each instance was pending in the court which was invoked to make the order. It seems to us that a very much closer analogy exists between such cases as the one referred to and the case at bar, on the one hand, and the sale of a decedent's lands, on the application of the administrator, for *distribution*, on the other, than between partition proceedings and this. Indeed the analogy we have suggested is perfect; and in respect of lands of an estate we have a statute which authorizes their sale, when they can not be equitably divided among the heirs or devisees, "by order of the probate court having jurisdiction of the estate." Code, § 2105. There is a manifest reason for this provision, growing out of the propriety, if not necessity, of the probate court in which the administration of an estate is pending having complete jurisdiction of it with power to make all orders and decrees necessary to full administration, distribution or division of assets and final settlement; and this reason applies with equal force to guardianships, the administration of which is pending in a given court of probate. Upon the other hand, there are obvious reasons for limiting the jurisdiction of *partition* of land among joint tenants or tenants in common to the probate court of the county where the land is situated, which do not at all obtain in respect of sales by administrators and guardians for distribution. That is an independent proceeding having no connection with matters already pending in any court of probate, and hence a resort to it in the court of the county where the land lies does not destroy the unity of an existing *lis pendens*. Then, too, it is necessary in partition proceedings that commissioners be appointed whose duty it is to go upon the land, acquaint themselves thoroughly with it and with the values of the several parcels into which it is to be divided, have it surveyed, and make report to the court appointing them. Obviously all this can be better done by the court and commissioners of the county where the land is situated than by the court and commissioners of a county which may be four hundred miles away. These considerations have no field

of influence in a case like the present, where the land is to be sold, whatever its value or physical characteristics, to subserve the purposes of a *lis pendens* in the court which issued the letters of guardianship, has jurisdiction of the estate of the wards and is charged with its administration and final settlement. Such court can better judge as to the necessity for the proposed sale; and that is really the only inquiry. And the sale itself can be conducted by the guardian as well under the order of the one court as the other. And it is to such court that the guardian must make report of the sale, since that court is charged with the duty of seeing to the proper administration and disposition of the proceeds of sale, and is, therefore, under a necessity to be thus apprised of the amount of such proceed; and in all reason the court having jurisdiction of the guardianship, and charged with the duty of conserving the interests of the wards and having in its records and files much of the *data* necessary to intelligent action should, and in our opinion does, have the power to confirm or set aside sales of the wards' lands, whether situated in one county or another. The statutes on this subject, while they contain no specific provision in this connection, can not be read without, in a general way, carrying conviction in line with the conclusion we have reached, that for the purposes of the sale of lands on the petition of a guardian for the support and maintenance of wards, the probate court having jurisdiction of the guardianship has also jurisdiction to order such sale, wherever the land may be in the State.

The analogy between this proceeding and actions for the *recovery* of land is equally, if not more imperfect. Those are adversary actions always. This proceeding is never of that character, but to the contrary is always instituted in the interest of the wards and for their benefit; and it is never successful unless it be made to appear that their interest will be subserved thereby. Manifestly, this inquiry can be best determined in the county of their residence and by the court having control of their estate and advised of its condition and their necessities, than in a county hundreds of miles away, and in a court having nothing to do with the estate and unadvised of its condition and the like. All this is otherwise in respect of actions for the recovery of land. These actions

[Ponder *et al.* v. Cheeves *et al.*]

are of easier and more satisfactory determination in the county where the land is situated, because the evidence upon which they are founded or defended is in that county, either upon its records, where muniments are relied on, or the memories of witnesses, where matters *aliunde*, such as possession, are relied on. And the party in possession, who is the party sued, is of course always by himself or tenant in the county where the land is situated.

It is upon these considerations—and others will suggest themselves—that we decline to follow *Turnipseed v. Fitzpatrick*, 75 Ala. 297, *supra*, and hold that the petition in this case was properly filed in Jackson county. The demurrers should have been overruled. The decree sustaining it is reversed, and a decree will be here rendered overruling the demurrer.

Reversed and rendered.